United States District Court
Southern District of Texas
**ENTERED**
February 17, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JOSEPH THOMAS LARIVIERE, § | |
| § | |
| Plaintiff, § | |
| § | |
| V. § | CIVIL ACTION NO. H-19-4592 |
| § | |
| ANDREW SAUL,[1] § | |
| COMMISSIONER OF THE SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
| § | |
| Defendant. § | |

## MEMORANDUM AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Magistrate Judge[2] in this social security appeal is Plaintiff's Motion for Summary Judgment (Document No. 13), Defendant's Response to Plaintiff's Motion for Summary Judgment (Document No. 14), and Defendant's Motion for Summary Judgment (Document No. 10). After considering the cross motions for summary judgment, the administrative record, and the applicable law, the Magistrate Judge ORDERS, for the reasons set forth below, that Defendant's Motion for Summary Judgment (Document No.10) is GRANTED, Plaintiff's Motion for Summary Judgment (Document No. 13) is DENIED, and the decision of the Commissioner is AFFIRMED.

---

[1] On June 17, 2019, Andrew Saul became the Commissioner of the Social Security Administration.

[2] The parties consented to proceed before the undersigned Magistrate Judge on April 27, 2020. (Document No. 9).

**I. Introduction**

Plaintiff, Joseph Thomas Lariviere ("Lariviere") brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration ("Commissioner") denying his applications for disability benefits ("DIB"), and Supplemental Security Income ("SSI"). Lariviere argues that the Appeals Council ("AC") committed errors of law when it found that Lariviere was not disabled from June 25, 2015 through October 19, 2016, because he could perform the full range of light work during that time-frame. Lariviere seeks an order vacating the AC's decision as it relates to the June 25, 2015 through October 19, 2016, time-frame, and awarding benefits, or in the alternative, remanding his claim for further consideration. The Commissioner responds that there is substantial evidence in the record to support the AC's decision that Lariviere was not disabled from June 25, 2015 through October 19, 2016, and disabled as of October 20, 2016, forward, that the decision comports with applicable law, and that the decision should, therefore, be affirmed.

**II. Administrative Proceedings**

On January 6, 2017, Lariviere filed for DIB and SSI claiming that since June 25, 2015, he has been disabled due to mastocytosis and depression. (Tr.265-275). The Social Security Administration denied his applications at the initial and reconsideration stages. (Tr. 126-137, 170-183). Lariviere then requested a hearing before an ALJ. (Tr.184-189). The Social Security Administration granted his request, and the ALJ, D'Lisa Simmons, held a hearing on July 30, 2018. (Tr. 76-107). On September 5, 2018, the ALJ issued a partially favorable decision. (Tr. 17-35).

Lariviere sought review by the AC of the ALJ's adverse decision. (Tr. 257-258). The AC

will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching her conclusion; (3) substantial evidence does not support the ALJ's actions, findings, or conclusions; (4) a broad policy issue may affect the public interest or (5) there is new and material evidence and the decision is contrary to the weight of all the record evidence. The AC, on May 3, 2019, granted Lariviere's request for review, and, notified Lariviere and his representative that the AC intended to issue a decision finding him disabled as of October 20, 2016, and that it would consider a statement about the facts and law in the case as well as additional evidence. The AC received neither additional facts and law nor new evidence. On September 19, 2019, the AC issued its written decision. (Tr. 1-9). The Appeals Council adopted the ALJ's "statements regarding the pertinent provisions of the Social Security Act, Social Security Regulations, Social Rulings and Acquiescence Rulings, the issues in the case, and the evidentiary facts" and adopted the ALJ's "findings and conclusions, with the exception of Finding 5, that the claimant was not disabled for the period from June 25, 2015, the alleged onset date, through October 19, 2016." (Tr. 5-6). Applying the five step sequential evaluation process, the AC concluded that Lariviere was not disabled . It is the AC's decision, which is considered the Commissioner's final administrative decision, that is subject to judicial review under 42 U.S.C. § 405(g).

  Lariviere has timely filed his appeal of the AC's decision. The Commissioner has filed a Motion for Summary Judgment (Document No.10). Likewise, Plaintiff has filed a Motion for Summary Judgment (Document No. 13). This appeal is now ripe for ruling.

  The evidence is set forth in the transcript, pages 1 through 986. (Document No. 5). There is no dispute as to the facts contained therein.

**III. Standard for Review of Agency Decision**

The court, in its review of a denial of disability benefits, is "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016)(quotation omitted). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision as follows: "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The Act specifically grants the district court the power to enter judgment, upon the pleadings, and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security with or without remanding the case for a rehearing" when not supported by substantial evidence. *Id.* While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute its judgment" for that of the Commissioner even if the evidence preponderates against the Commissioner's decision. *Chaparo v. Bowen*, 815 F.2d 1008, 1009 (5th Cir. 1987); *see also Jones*, at 693; *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)); *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir.

1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quoting *Hemphill v. Weinberger*, 483 F.2d 1127 (5th Cir. 1973)).

## IV. Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. *Id.* § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for [him], or whether [he] would be hired if he applied for work.

*Id.* § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milan v. Bowen*, 782 F.2d 1284 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to determine disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

5

2. If the claimant does not have a "severe" impairment or combination of impairments, he will not be found disabled;

3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5. If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience, and residual functional capacity, he will be found disabled.

*Id.*, 954 F.2d at 293; *see also Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner demonstrates that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett*, 67 F.3d at 563.[33]

In the instant action, the AC determined, in its September 19, 2019, decision that Lariviere had not engaged in substantial gainful activity since June 25, 2015, the alleged onset date (step one); that Lariviere's indolent systemic mascytosis, degenerative disc disease of the thoracic spine,

---

[33] Several of the Social Security Rulings ("SSRs") governing social security cases were amended or rescinded in 2016 and 2017. *See, e.g.,* 81 Fed. Reg. 66138-01, 2016 WL 5341732 (F.R. Sept. 26, 2016); 82 Fed. Reg. 5844-01, 2017 WL 168819 (F.R. Jan. 18, 2017). Depending on the regulation, the new rules apply to claims filed either on or after January 17, 2017, or March 27, 2017. The regulations provide, in pertinent part, that "[w]e expect that Federal Courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").

and obesity were severe impairments (step two); that Lariviere's severe impairments did not meet or equal one of the listed impairments in Appendix 1 of the regulations (step three); that from June 25, 2015, through October 29, 2016, Lariviere "had the residual functional capacity to perform a full range of light work" and, that as of October 20, 2016, Lariviere had the residual functional capacity to perform a limited range of light work. Specifically that he had the RFC to perform light work with occasional stooping; no climbing of ramps, stairs, ladders, ropes, or scaffold; no crouching, crawling, or kneeling; no twisting or bending from waist level; no moderate exposure to extreme cold, humidity, and vibration; no exposure to dangerous machinery and unprotected heights; and the option to sit/stand every twenty minutes. The AC, as had the ALJ, concluded that Lariviere could not perform his past relevant work (step four); and the AC, as had the ALJ, concluded that prior to October 20, 2019, Lariviere was a younger individual age 18-49 and then changed age categories to an individual closely approaching advanced age, had a limited education and no transferable skills, and with an RFC for a full range of light work, under Medical-Vocational Rules 202.18 and 202.11 was not disabled within the meaning of the Act from October 25, 2015 through October 19, 2016, and that with his vocational profile, and the testimony of a vocational expert, under the framework of Medical-Vocation Rule 202.11, he became disabled on October 20, 2016. (step five).

**V.  Discussion**

In this appeal, Lariviere argues that the ALJ erred by finding that his depression and anxiety were not severe impairments at step two. Lariviere argues that his depression and anxiety had an adverse impact on his potential ability to perform full time substantial gainful work in light of his additional physical limitations. According to Lariviere, his treatment records with his treating psychiatrist, Melissa E. Wilkes Requenez, M.D., and his treating primary care physician, Dr. Fareed

Khan, along with his Function Reports and testimony at the July 30, 2018, hearing, undermine the ALJ/AC's conclusion that Lariviere's depression and anxiety "improved with prescription medications" and his mental status was essentially benign" and as such, he had only "mild" psychiatric limitations. (Document No. 13, p. 6). Lariviere points to his treatment records with Dr. Wilkes Requenez for depression and anxiety on May 7, 2015 (Tr. 405), August 25, 2015 (Tr. 554-557), January 20, 2016 (Tr. 528-530), April 6, 2016 (Tr. 521), May 16, 2016 (Tr. 513), and August 22, 2016 (Tr. 507), which show that he had GAF scores of 60 or 55-60.[3] Lariviere further points to his testimony in which he confirmed statements made in the Function Report that he does not handle stress or changes in routine, and that he has a fear of his condition. (Tr. 86). He also testified that the medications prescribed for anxiety and depression have mixed results, "[y]ou know, it seems like they're helping, and sometimes it they're not." (Tr. 87). The Commissioner has responded and argues that Lariviere has not established that depression and anxiety were severe impairments, and that, contrary to Lariviere's argument, the ALJ/AC considered the medical records and testimony. (Tr. 6-7).

The regulations provide that at step two, the claimant bears the burden of showing that he has a severe impairment or combination of impairments that significantly limit the claimant's

---

[3] The Global Assessment of Function ("GAF") scale is used to rate an individual's "overall psychological functioning." American Psychiatric Institute, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994). The scale assigns a numeric range from "1" (persistent danger of severely hurting self or others') to "100" ("superior functioning with no symptoms that impair functioning").The GAF scoring system no longer appears in the latest edition of the DSM. A GAF score in the range of 60 to 51 indicates "moderate symptoms, such as occasional panic attacks, or some difficulty in building meaningful social relationships." A next range, 50 to 41 indicates "serious symptoms, such as suicidal thoughts or severe, obsessive rituals. The person could also have severe impairment in work, such as being unable to keep a job."

physical or mental ability to do basic work activities. The Fifth Circuit in *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) held that this language was not in accord with the statute defining disability and opined that "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." The Fifth Circuit further stated that "[u]nless the correct standard is used, the claim must be remanded to the [Commissioner] for reconsideration." *Id.* at 1106. The Fifth Circuit recently reiterated the *Stone* standard as its "binding precedent" writing: "'[a]n impairment can be considered as not severe *only* if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with an individual's ability to work, irrespective of age, education or work experience.'" *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018)(quoting *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000)(emphasis in original). And in *Keel v. Saul*, ___F.3d.___, 2021 WL 222142 (5th Cir. 2021) held that an ALJ does not error by citing to SSR 85-28 and not *Stone.* SSR 85-28 allows for an impairment to be found "not severe" where there is minimal effect on an individual's ability to work. The Fifth Circuit wrote that "*Stone* and SSR 85-28 are not substantially different." *Keel*, at *3.

The ALJ determined, as follows, that Lariviere's depression and anxiety were non-severe impairments:

> Because the claimant has a medically determinable mental impairment, I considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four areas of mental functioning are known as the "paragraph B" criteria.
>
> The claimant contended his mental condition affected his ability to remember, complex tasks, concentrate, understand, follow instructions, get along with others,

get along with authority figures, handle stress, and handle changes in routine (*See* Hearing Testimony and Exhibits B2E, B5E, and B8E). However, on reviewing the claimant's available medical records on June 6, 2017, Richard Luck, Ph.D., a State agency medical consultant (psychologist), opined the claimant's mental condition was not severe (Exhibits B6A and B7A). I agreed.

On July 18, 2017, and September 11, 2017, Fareed Khan, M.D. a treating physician, opined the claimant was permanently disabled in part due to depression but, only offered physical limitations and providing no opinion regarding the claimant's mental limitations. I gave this opinion regarding the claimant's depression little weight. (Exhibits B5F and B7F). Physical examinations and mental status examinations contained in treatment notes covering the period beginning July 9, 2013, through March 29, 2018, from the Harris County Hospital District described the claimant as oriented, normal behavior, normal speech, goal-directed and logical thought process, intact associations, intact memory and concentration, intact attention, fair insight and judgment, and fair fund of knowledge with no depression, no loss of interest in normal activity or change in sleep pattern (Exhibits B1F, pages 8, 27, and 36: B2F, pages 2-10, 34, 41, and 108; B4F, pages 8, 22, 28, 35, 50, and 88; B8F, pages 7, 37, and 52; and B9F, pages 14, 51, 80, 81 and 113). A global assessment of functioning (GAF) score of 60 was documented in treatment notes dated April 6, 2016, describing the claimant's mental status examination as essentially benign and within normal limits (Exhibit B4F, pages 56-57).

These clinical observations and subjective reports are not consistent with nor did they support the claimant's allegations of mental limitations to the extent alleged. Therefore, I found the claimant had a <u>mild</u> limitation in understanding, remembering, or applying information; a <u>mild</u> limitation in interacting with others; a <u>mild</u> limitation in concentrating, persisting, or maintaining pace; and a <u>mild</u> limitation in adapting or managing onself. Because the claimant's medically determinable mental impairment caused no more than "mild" limitation in any of the functional areas, it was a non-severe impairment (20 CFR 404.1520a(d)(1) and 416.920a(d)(1)). (Tr. 25)(footnote omitted).

As discussed above, a "severe" impairment is "one that affects an individual's ability to perform basic work-related activities for an adult." SSR 16-3p; 20 C.F.R. §§ 404.1520(c), 416.920(c). Basic work activities "mean the abilities and aptitudes necessary to do most jobs." With respect to mental abilities: "[u]nderstanding, carrying out, and remembering simple instructions," "use of judgment," "[r]esponding appropriately to supervision, co-workers and usual work situations," and "[d]ealing with changes in a routine work setting." 20 C.F.R. §§ 404.1522(b),

416.922(b). Here, substantial evidence supports the ALJ's decision that Lariviere's mental impairments, depression and anxiety, were not severe during the time frame at issue. The decision shows that the ALJ *did* consider Lariviere's self reported symptoms in the Function Reports and at the hearing, his treatment records, and the opinion Dr. Luck, a psychologist and State medical consultant. Dr. Luck opined "clinical observations and subjective reports are not consistent with nor did they support the claimant's allegations of mental limitations to the extent alleged." (Tr. 25). The mental status examination notes during the relevant time frame from Dr. Melissa Wilkes Requenez, show that Lariviere had a clinic visit on January 16, 2016. She had not seen him since May 2014. (Tr. 528-535, 729-735). Lariviere reported "doing well with Celexa." Lariviere denied feeling depressed and likewise denied having panic attacks. He reported that "I'm doing pretty well." (Tr. 529), The results of his mental status exam were normal. He had a GAF of 55-60. (Tr. 529). At his April 6, 2016, clinic visit with Dr. Wilkes-Requenez, Lariviere reported there was "nothing new." He reported that Celexa was helping, that his mood was stable. He denied feeling depressed. The results of his mental status exam were normal. He had a GAF of 60. (Tr. 520-526, 721-727). At his October 20, 2016, clinic visit, Lariviere reported that Celexa continued to control his anxiety. He denied panic attacks and depressed mood. The results of his mental status exam were normal. He had a GAF of 55. (Tr. 499-500, 699-704). Treatment notes from Dr. Fareed Khan, his primary care physician, also show normal psychiatric responses during his physical examinations. *See* Treatment Note of October 28, 2015 (Tr. 536-542, 737-742); May 16, 2016 (Tr. 512-515, 713-720); October 24, 2016 (Tr. 492-497, 693-698 "he has a normal mood and affect. His behavior is normal. Judgment and thought content normal" ). Upon this record, Lariviere has not pointed to evidence to undermine the ALJ's determination that he had only mild functional

limitations. In considering the severity of Lariviere's anxiety and depression, the decision show that the ALJ considered Lariviere's allegations of symptoms and the medical records to determine whether he had a severe impairment. While Lariviere' reported problems with concentration, his two treating physicians during the relevant time- frame noted no such difficulties during their examinations and he did not complain of problems concentrating. To the extent that Lariviere argues that the record supports greater functional limitations based on Lariviere's testimony at the hearing and Function Reports, conflicts in the evidence are for the Commissioner to resolve. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). Moreover, the Fifth Circuit has stated that an impairment that is reasonably controlled with medication or therapy cannot serve as the basis of a disability finding. *Lovelace v. Bowen*, 813 F.2d 340, 348 (5th Cir. 1988). Upon this record, substantial evidence supports the step two finding that Lariviere was controlling his anxiety and depression with medication, and this supports the ALJ's determination that anxiety and depression caused no more than a minimal effect on him, and would not have been expected to interfere with his ability to work.

Lariviere further argues that the AC erred in finding him capable of performing a full range of light work through October 19, 2016. According to Lariviere's that AC's decision "lacks any depth analysis of the medical records" and that had the AC "conducted a proper evaluation of the medical evidence, a different result would have ensued." (Document No. 13,p. 15). Lariviere further argues that even assuming that he had any meaningful RFC during the relevant time-frame, it was at the sedentary level, which under the Commissioner Grid Rule 201.14 directs a finding of disabled.

RFC is what an individual can still do despite his limitations. It reflects the individual's

maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *2 (SSA July 2, 1996). The responsibility for determining a claimant's RFC is with the AC. *see Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990). The AC is not required to incorporate limitations in the RFC that they did not find to be supported by the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). Upon this record, the AC considered the objective medical evidence; Lariviere's testimony and Function Reports; and the opinion evidence. The AC's RFC determination is consistent with the record as a whole. The medical records show that Lariviere has been diagnosed with and treated for systemic mastocytosis. However, the treatment records from his treating hematologists show that during the relevant time-frame, show that his form was indolent. Simply put: he has never met criteria for smoldering or advance systemic mastocytosis, and his "systemic body pain" is not coming from systemic mastocytosis." (Tr. 383). *See* (TR. 405-415, May 7, 2015, Hematology Clinic note states "continues with no signs of aggressive mastocytosis"); Tr. 395-404, Hematology Clinic note from April 12, 2016: "Mr. Lariviere . . . with indolent systemic mastocytosis diagnosed in 2012 who continues to demonstrate no signs of aggressive mastocytosis and we will continue to treat symptomatically." ); (Tr. 536-542, 737-742); Treatment note of Dr. Khan dated October 28, 2015, "I have discussed with him ...his hematology opinion that pain is not related to mastocytosis." ); (Tr. 554-561, 752-759, August 25, 2015, treating note of Dr. Khan, which states: "I read what the Hematology note had to say and explained to him that this was considered mild disease. We also discussed that his pain was not most probably originating from his mastocytosis"). Further the state agency medical consultants concluded that Larievere could perform a full range of light work. The AC, based on the totality of the evidence, concluded that Lariviere could perform a full range of

light work. Because Lariviere's mental impairments did not result in functional limitations, the limitation were properly omitted from his RFC. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988)(holding that ALJ is not required to incorporate limitations in RFC that he did not find to be supported by the record).

## V. Conclusion

Considering the record as a whole, the Court is of the opinion that the ALJ and the Commissioner properly used the guidelines propounded by the Social Security Administration, which direct a finding that Lariviere was not disabled within the meaning of the Act from October 2015 through October 19, 2016, that substantial evidence supports the AC's decision, and that the Commissioner's decision should be affirmed. As such, it is

ORDERED Plaintiff's Motion for Summary Judgment (Document No. 13), is DENIED, Defendant's Motion for Summary Judgment (Document No.10) is GRANTED, and the decision of the Commissioner of Social Security is AFFIRMED.

Signed at Houston, Texas, this 17th day of February, 2021

Frances H. Stacy
United States Magistrate Judge